A. J. BUZICK, Appellee, v. BENJ. TODMAN, Appellant.

HIGHWAYS: Law of Road—Operating Automobile on Left-hand
1 Side—Negligence. Principle recognized that one who operates his automobile on the left-hand side of the highway may be guilty of negligence. Section 1571-m18, Code Supplement, 1913.

HIGHWAYS: Law of Road—Driving on Left-hand Side—Effect.
2 One may drive his horse in any part of the street, provided that, upon meeting another coming from the opposite direction, he give one half the traveled way and keep to the right of the center thereof.

HIGHWAYS: Law of Road—Applicability of Statute. The statute
3 (Section 1569, Code Supplement, 1913) requiring persons on horseback or in vehicles, meeting each other on the highway, to give one half of the beaten path by turning to the right, applies only when travelers on a single highway approach each other from *opposite* directions.

NEGLIGENCE: Contributory Negligence—Disregard of Known
4 Danger. One who has adequate knowledge of the danger threat-

ening him by reason of the negligent acts of another, and makes no effort to avoid such danger, though having ample time to do so, is guilty of contributory negligence. So held where one made no effort to avoid a negligently operated automobile.

*Appeal from Hamilton District Court.*—R. M. WRIGHT, Judge.

SATURDAY, APRIL 7, 1917.

ACTION for damages resulted in judgment against defendant, from which he appeals.—*Reversed.*

*F. J. Lund* and *Chase & Chase,* for appellant.

*G. D. Thompson,* for appellee.

LADD, J.—The main street of Blairsburg extends north and south. Two streets intersect this street at right angles. The plaintiff's son and another young man, with a lady on the lap of each, in the evening of September 5, 1915, drove a single horse and buggy from the south into the main street, and proceeded north along the west side until the head of the horse had reached the south line of the street intersection to the north, when he first observed defendant approaching from the east, with his automobile. He pulled up the lines, and, as he stopped the horse, defendant's automobile struck the horse and broke its leg, because of which it was shot. Recovery for the value of the horse is sought in this action.

The evidence on the part of the plaintiff tended to show that the east side of the main street was rough, while the west side was smooth and well traveled; that for this reason the horse was driven on the west side; that defendant was driving his automobile at about the center of the street, at a speed of from 10 to 12 miles an hour; that it veered to the southwest from the east line of the street intersection, and struck the horse somewhat south of the center of the east and west street.

The evidence in behalf of defendant was to the effect that, as he approached the main street, coming from the east, he was on the north side of the center, and slowed his car so that it was moving about 7 miles an hour; that he did not see the horse until his automobile struck it; that his failure to see was owing to the lights of a car near the north side of the street beyond the west line of the intersection; and that these lights dazzled his eyes so that he could not see the horse. Appellant contends that the evidence was not such as to carry the issues to the jury.

1. HIGHWAYS: law of road: operating automobile on left side: negligence.

The defendant was required to travel on the right-hand side of the street, "as near the curb as the condition of the street will permit," with his automobile (Paragraph 1, Section 1571-m18, Code Supplement, 1913); and if, instead, he veered his car to the southwest and on the left side of the street, the jury might have found this to have been negligence. Defendant testified he could not see, because the lights of an automobile near a garage on the north side of the street to the west so dazzled his eyes that he did not see the horse until struck. To have proceeded on his way in disregard of other travelers or objects ahead of or approaching him, and therefore without keeping any lookout, might also have been regarded as negligent.

2. HIGHWAYS: law of road: driving on left-hand side: effect.

The above statute, however, does not apply to teams and wagons, and plaintiff's son, notwithstanding an instruction to the contrary, is not to be regarded as negligent in having driven his horse and buggy on the left side of the street.

"Persons on horseback, or in vehicles, including motor vehicles, meeting each other on the public highway, shall give one half of the beaten path thereof by turning to the right." Section 1569, Code Supplement, 1913.

Under this statute, he might properly have driven his horse in any part of the street, provided that, upon meeting another coming from the opposite direction, he gave one half the traveled way, and kept to the right of the center thereof. *Riepe v. Elting,* 89 Iowa 82; *Baker v. Zimmerman,* 179 Iowa 272.

3. HIGHWAYS:
law of road:
applicability
of statute.

But this statute does not apply to the meeting of travelers at the intersection of streets and approaching at right angles. *Garrigan v. Berry,* 12 Allen (Mass.) 84; *Norris v. Saxton,* (Mass.) 32 N. E. 954; *Lyford v. Jacob Schmidt Brewing Co.,* 110 Minn. 158 (124 N. W. 831); *Gilbert v. Burque,* 72 N. H. 521 (57 Atl. 927); 2 Elliott on Roads & Streets (3d Ed.) Section 1081; *Morse v. Sweenie,* 15 Ill. App. 486; 37 Cyc. 272. In *F. W. Cook Brewing Co. v. Ball,* (Ind.) 52 N. E. 1002, it was held that travelers coming from opposite directions must turn to the right and give half the way; but, by implication, it was intimated that this is not the rule where the meeting is by travelers approaching at right angles. Travelers cannot well be said to meet when they come together in different directions from two roads or streets which intersect each other. If so, they may meet, in the statutory sense, when moving in the same direction, the one vehicle undertaking to pass the other. The statute was intended to lay down a definite rule applicable only to a situation most frequent when travelers approach each other on a single highway from opposite directions. The rights and duties of parties approaching each other on intersecting roads, save as to the manner of turning motor vehicles from one road into another (Paragraph 4 of Section 1571-m18, Code Supplement, 1913; *Walterick v. Hamilton,* 179 Iowa 607, are left to be governed by the salutary rules of the common law, which are ample in affording the careful traveler a remedy for any injury which may be suffered from the carelessness of others. The circum-

stance, then, that plaintiff's son was driving along the left side of the street, and did not turn to the right as defendant's automobile veered to the south, if it so did, did not necessarily amount to negligence on his part.

**4. NEGLIGENCE: contributory negligence: disregard of known danger.** Plaintiff's son testified that he noticed defendant with his automobile just as it was coming to the east line of the intersection, but that the light previously had indicated its approach.

"Q. Where were you when you saw him? A. Well, I was past this crossing here (south line of intersection). Q. Well, what did you do when you saw him? A. I pulled on the lines and stopped the horse just before he hit me. Q. Did you observe him coming towards you? A. I seen he was coming towards me, but I didn't know whether he was going to go north or whether he was going to go straight west. * * * Q. What did you do when you say you didn't know which way he was going? A. Why; I stopped the horse. I couldn't do nothing. Q. He struck the horse? A. He struck the horse."

On cross-examination, the witness testified that the horse was walking.

"Q. Will you tell the jury where you were when you first saw the automobile? A. I just got past this crossing. Q. And where was the automobile? A. Over here. He was past this crossing here 'when— Q. East of the crossing? A. Yes, sir. * * * Q. And your horse was walking? A. Yes, sir. Q. If you had stopped at that point, would the automobile have struck you in the course it went? A. Not if I had stopped back there. It wouldn't have hit me. * * * Q. You could have done it? A. I could have, but I didn't think it was my place to stop. Q. You didn't want to stop? A. I would have stopped if I had known he was going to run into me. Q. No, but you kept right on going? A. Yes, sir, from the

time—I kept right on going till I seen he was going to hit me, and I stopped my horse. Q. You said in direct examination that, when he passed this crossing north of the church, he appeared to be going in a southwesterly direction. A. Yes, sir. Q. And you saw that at the time? A. Yes, sir. * * * Q. Now, Mr. Todman wasn't running at a very high rate of speed? A. I should judge he was going 10 or 12 miles an hour. Q. And you were going at a walk? A. Yes, sir. Q. You had no trouble stopping your horse whenever you wanted to, did you? A. No, sir. * * * Q. After seeing Mr. Todman's car, how far did you travel with your horse and buggy before you were struck? A. Traveled to where I stopped there. Q. Yes, from what point? A. From this crossing here. Q. Did you see him before you came to the crossing? A. No, sir."

Witness then testified that there were no obstructions in the street.

"* * * Did any of this buggy party of yours· say anything about ·a car coming before you saw it yourself? A. Yes, sir. Q. Who suggested it? A. Mr. Hale. * * * Q. I thought you told Mr. Thompson that he (Todman) was in the center of the street? A. He sheered off to the south a little. Q. You saw him as soon as he— A. Yes, sir. Q. And you saw the direction he was going in some distance before he came to you, didn't you? A. Well, I didn't see him at all; I didn't know whether he was going to come— Q. No, but you saw the direction he was going? A. Yes, sir. Q. For some distance before he struck you? A. I seen him before he got over the crossing. Q. Yes, and saw the direction he was coming all the time? A. Yes, sir. Q. Up until the time he struck the horse? A. Yes, sir."

The evidence tended to show that the collision occurred about 15 feet north of the south line of the intersection,

and about the same distance east of the west line thereof. The automobile, then, must have been a little more than 50 feet east of the horse when plaintiff's son first observed it approaching, and little less than that when he observed it begin veering to the south.   Though fully aware that it was moving toward him, plaintiff's son made no effort to avoid it.   He neither stopped his horse nor turned to the right or left, but allowed his horse to walk on until its leg was broken by coming in contact with the front spring of the automobile.

We are of opinion that, though defendant may have been negligent, plaintiff's son also failed to exercise any care to obviate the collision, and because of this was guilty of contributory negligence.   On this ground, insufficiency of the evidence to sustain the verdict, a new trial should have been ordered.—*Reversed.*

Gaynor, C. J., Evans and Salinger, JJ., concur.