Stella Vickery, Appellee, v. Samuel Armstead, Appellant.

NEGLIGENCE: Identity of Wrongdoer. Evidence held sufficient to
1 present a jury question on the issue whether defendant was the driver of a vehicle at the time of an accident.

TRIAL: Instructions—Justifiable Assumption of Negligence. Undis-
2 puted evidence that the driver of a vehicle, going north, drove rapidly and without excuse along the left-hand side of the highway, and into the vehicle of another party, who was slowly driving south on the extreme right-hand side of the highway, justifies the court in assuming negligence upon the part of the driver who was on the prohibited side, and nonnegligence on the part of the driver who was on the proper side of the highway.

*Appeal from Buena Vista District Court.*—D. F. Coyle, Judge.

JANUARY 18, 1921.

ACTION for damages on account of injury to plaintiff, received in collision of buggy in which plaintiff was riding, and an automobile claimed by plaintiff to have been driven by defendant. Judgment for plaintiff. Defendant appeals.—*Affirmed.*

*Healy & Faville,* for appellant.

*T. H. Chapman* and *Helsell & Helsell,* for appellee.

ARTHUR, J.—There is no dispute in the testimony as to how the accident happened. The defendant denied being the driver of the car which collided with the buggy in which plaintiff was

1. NEGLIGENCE: identity of wrongdoer.

riding. Defendant's claim is that he was not at the scene of the accident at all. Neither the defendant nor any witness who testified in his behalf pretended to have any knowledge of the accident or of the facts and circumstances surrounding the accident.

The undisputed evidence shows that, on the evening of November 10, 1917, the plaintiff was riding in a buggy, drawn by horses driven by her husband, on a public highway near the town of Sioux Rapids, and that, when they were upon a bridge, which was a part of the highway, someone approached from the opposite direction, driving a Ford car, and, in passing or attempting to pass the buggy in which plaintiff was riding, drove the Ford car into the buggy, and caused the horses to become frightened and run away. The roadway of the bridge was about 18 feet wide and 100 feet long. The team and buggy were being driven south, slowly and cautiously, with the team under control, on the extreme right-hand side of the bridge, as near as the team could be driven to the rail. The driver of the Ford car, coming north at a rapid rate of speed, driving on the wrong side of the roadway of the bridge, drove his car into the buggy, cut the tug eye off, broke the hook off the singletree, and broke the tongue of the buggy, so that it ran up between the horses, causing them to run away and upset the buggy. The driver of the Ford car did not stop or offer any assistance. There was no occupancy of the roadway, and no distracting facts or

circumstances making it necessary for the driver of the Ford to be on the wrong side of the highway. There was ample room, and nothing to prevent the driver of the Ford from being on his proper side of the roadway, and passing the buggy without colliding with it. The roadway was 18 feet wide. The collision frightened the team and it ran away, carrying the buggy the remainder of the way across the bridge and across the south approach, where the buggy upset over an embankment, injuring the plaintiff. She was in good health before the accident. As a result of the accident, her wrist was fractured, and the ligaments in her shoulder were torn loose from the bone. Two years after the accident, she was unable to use her arm, and could not open her hand, and the muscles were atrophied. Her arm was six weeks in a cast. In the opinion of a doctor witness who attended the plaintiff, plaintiff will never have the free use of her arm again. The doctor testified:

"It seems that the muscle that raises the arm is atrophied, and she has very little use of it. I should judge that this injury would be very painful, and I do not think that she has the power to close her hand. It is possible that she may be able to later on, but I do not think it is probable. There are a few other bruises on her body, in the way of discoloration."

Under this state of facts, the court instructed the jury that the plaintiff was herself free from contributory negligence, and that the driver of the Ford car was guilty of negligence in some respects alleged by plaintiff, and that his negligence was the proximate cause of the injuries received by the plaintiff, if she was injured, and submitted to the jury for determination only the questions of whether or not the defendant was the driver of the Ford car which ran into the vehicle in which plaintiff was riding, and whether the plaintiff was injured in the runaway which followed the collision, and if so, to what extent she was injured, and what amount of damages, if any, plaintiff should have.

At the close of plaintiff's testimony, defendant moved for a directed verdict, on the ground that there was not sufficient evidence to establish defendant's identity as the driver of the Ford car which collided with the buggy. Defendant also asked an instruction to the same effect. The motion was overruled, and

the instruction was not given. Defendant assigns as error the overruling of his motion and the failure to give the instruction asked.

The major question in the case may be said to be the identity of the defendant. One S. N. Frick, witness for plaintiff, testified that he was driving behind the Ford car; that the lights of his car shone directly on the license number of the Ford car, and that the license number was 172934. Frick reported the number to the mayor of Sioux Rapids, a near-by town, that evening. Defendant himself admitted that he owned a Ford automobile, and that his license number was 172934. He admitted that he drove to town three times on the evening of the accident, but claimed that neither he nor his car was in the accident. Witness Frick also testified that the driver of the Ford car was a large, heavy-set man, weighing in the neighborhood of 200 pounds; that he wore a soft crush hat and a three-quarters length cravenette; that, as to size and appearance, the driver of the Ford car tallied up correctly with the defendant; that he saw defendant at the hearing on the criminal charge, a short time after the accident, and that he recognized him as the same man he saw driving the Ford car at the time of the collision.

Mr. Vickery, plaintiff's husband, testified that the automobile which ran into his buggy was a Ford car. Early the next morning after the accident, Vickery found a Ford hub cap at the point of collision.

Will Cuthbert, witness for plaintiff, testified that he was at Armstead's house, the day following the accident, and noticed that the hub cap was off of the left front wheel, and that the left front fender was smashed. As before stated, defendant claimed to know nothing about the collision, and none of his witnesses saw the collision. The testimony offered by defendant only purported to account for the damaged fender on defendant's Ford as being made at another time, and to show that there was no absence of a hub cap on the Ford. Although defendant claimed not to be the driver of the Ford at the time of the collision, there was no serious attempt to show that he was at some other place at the time of the accident.

We have examined the testimony bearing upon the question of defendant's identity as the driver of the car, and conclude

that there was ample evidence to warrant the submission of this question to the jury.

Defendant assigns as error that the question of defendant's negligence was not submitted to the jury. We think the assignment is without. merit. The facts concerning the collision were not in dispute. The facts as to the position of the buggy on the roadway, and how it was being driven, and the facts as to how the Ford car which collided with the buggy was being driven, and the manner in which it ran into the plaintiff's buggy, and all attendant circumstances, were testified to by plaintiff's witnesses, and their testimony was not disputed in any particular. Defendant did not attempt to show that the accident happened in any other manner than as proven by plaintiff. In fact, defendant and his witnesses professed complete ignorance as to the occurrence of any such accident. The evidence shows that whoever drove the Ford car drove at a rapid rate of speed, on the wrong side of the highway, without any excuse for being on the wrong side, and crashed directly into the side of the buggy, smashing the wheel, the tug eye, and the tongue. Under this state of uncontradicted and undisputed facts, the court was warranted in instructing the jury that the driver of the Ford car was guilty of negligence in some of the respects alleged. As we understand the record, no question was raised at the trial that the conduct of the.driver of the Ford did not constitute negligence. Defendant requested but one instruction, and that was for a directed verdict because the identity of defendant, as the driver of the Ford, was not sufficiently established. In the absence of circumstances excusing it, the failure to drive the vehicle on the driver's right side of a highway, at a passing point with another vehicle coming from the opposite direction,—that is, the failure to observe the law in this respect,—is negligence, as a matter of law. *Buzick v. Todman,* 179 Iowa 1019.

2. TRIAL: instructions: justifiable assumption of negligence.

Where there is no dispute in the evidence as to the facts, or as to the existence or nonexistence of a particular fact, or the evidence is such that reasonable minds could not differ as to the facts, then no question arises for presentation to the jury, and it is the court's duty to apply the law. *Sanderson v. Chicago, M. & St. P. R. Co.,* 167 Iowa 90. No evidence was offered opposing

or disputing the facts of negligence claimed by the plaintiff, and in such situation, it was not error to charge the jury that the undisputed evidence showed that the driver of the Ford car was guilty of negligence.

Error is assigned because the court did not submit the question of plaintiff's contributory negligence to the jury, but instructed the jury that plaintiff was free from contributory negligence. Ordinarily, contributory negligence is a question for the jury. But in this instance, defendant claimed entire ignorance of the accident. He offered no evidence to show how the accident happened. The facts hereinbefore stated show that there was nothing that plaintiff could have done to prevent the accident. We think the evidence affirmatively and conclusively and without dispute shows her freedom from contributory negligence. Under the facts, it was not error to instruct the jury that plaintiff was free from contributory negligence.

Defendant assigns as error that recovery for future pain and suffering was permitted, by submitting that question to the jury, because he claims that there was no such issue presented by the petition, and no evidence to support it. This assignment is without merit. The petition alleges:

"That, as a result of said injuries complained of herein, she was rendered sick and sore, and suffered severe pain, and that she has been compelled to employ physicians at an expense to herself, and she will, for a long time, and has been since the occurrence herein related, disabled as a result of the collision caused by the defendant."

The petition further alleges:

"Causing the plaintiff to sustain a broken wrist, strained the ligaments and muscles of the right arm and shoulder, permanently injuring the plaintiff."

The testimony supports such allegations. Some of the evidence is above set forth.

The last error relied upon by appellant for a reversal is that the court erred in overruling defendant's motion for a new trial. All questions raised by the motion have already been discussed, except that based on the discovery of new evidence. Granting a new trial on this ground was discretionary with the trial court. We have carefully examined the record on this

question, and conclude that the court did not abuse its discretion, and was not in error in overruling the motion for a new trial.

The judgment of the court below is—*Affirmed.*

EVANS, C. J., WEAVER and STEVENS, JJ., concur.

FAVILLE, J., took no part.