Jan SONNEK, Individually, and Jan Sonnek, as Parent and Next Friend of Jackie Sonnek, Appellants,

v.

Jennifer Sue WARREN, Appellee.

No. 93–477.

Supreme Court of Iowa.

Sept. 21, 1994.

James A. Pugh and David A. McNeill of Morain, Burlingame, Pugh & Koop, West Des Moines, for appellants.

Claude H. Freeman and Ken A. Winjum of Grefe & Sidney, Des Moines, for appellee.

Considered by McGIVERIN, C.J., and LARSON, CARTER, SNELL, and TERNUS, JJ.

SNELL, Justice.

This appeal concerns alleged errors that occurred during a trial in which appellants, Jan and Jackie Sonnek (Sonneks) were denied consortium damages arising out of a two-car accident involving Joanie Sonnek and Jennifer Warren (Warren). The district court entered judgment in accordance with the jury verdict in favor of defendant Warren. Sonneks appeal to this court from that judgment and raise three issues. They claim the trial court erred in: (1) failing to instruct the jury that Warren had a duty to try to avoid a collision with a vehicle traveling on the wrong side of the road; (2) failing to submit a last clear chance instruction to the jury; (3) excluding lay opinion testimony of a police officer regarding the speed at which a prudent driver should have been traveling at the time and place of the accident.

Our review of this appeal is for errors of law. Iowa R.App.P. 4. We independently determine the questions of law presented. *Blunt, Ellis & Loewi, Inc. v. Igram,* 319 N.W.2d 189, 192 (Iowa 1982); *Dunphy v. City of Creston,* 256 N.W.2d 913, 917 (Iowa 1977). We affirm.

## I. Facts

Around 6:00 p.m. on December 29, 1989, Jennifer Warren was driving north on Beaver Avenue in Johnston, Iowa. Traveling with her were her friends Natasha Vandervort and Jodi Kloppenburg.

Witnesses testified that Warren's vehicle was traveling at a speed of approximately

thirty-five miles per hour—the posted speed limit. Although weather conditions were deteriorating that evening, Warren did not notice any ice on the roads as she drove.

Approximately one mile north of Interstate 80, Warren and Vandervort noticed a car, traveling south, pull out into the northbound lane in an apparent attempt to pass a truck. Warren immediately slowed down by braking and downshifting her vehicle. She thought that by doing so the oncoming vehicle would be able to get back into the proper lane. Warren testified that the Sonnek vehicle "had plenty of time to get back over." However, the Sonnek vehicle stayed in the northbound lane. Realizing something was wrong, Warren began "emergency braking." Nonetheless, Sonnek's vehicle struck Warren's vehicle in the northbound lane.

Joanie Sonnek, the driver, has no recollection of the circumstances surrounding the accident. She sustained permanent "closed head damage." Jan and Jackie Sonnek, for the purposes of this lawsuit, admit Joanie bears the majority of fault for the accident. Joanie alleges no cause of action in this case.

Jan and Jackie Sonnek filed this lawsuit against Warren for damages resulting from lost spousal and parental consortium. At trial, they requested the court to submit the following instruction to the jury:

> "Proper lookout" is the lookout a reasonable person would keep in the same or similar situation. It means more than looking and seeing. It includes being aware of the operation of the driver's vehicle in relation to what the driver saw or should have seen. *It also requires a driver to try to avoid a collision with a vehicle traveling or positioned on the wrong side of the road.*
>
> A particular result may have more than one proximate cause, and the fault of two or more persons may combine so that the fault of each is a proximate cause of an injury or damage.

(Emphasis added.) The court refused to submit to the jury the portion of the instruction emphasized above.

The instruction submitted by the trial court read as follows:

Instruction No. 10

"Proper lookout" is the lookout a reasonable person would keep in the same or similar situation. It means more than looking and seeing. It includes being aware of the operation of the driver's vehicle in relation to what the driver saw or should have seen.

A violation of this law is negligence.

At trial, the court sustained Warren's objection to some of the lay testimony of police officer Kenneth Hull. Hull's testimony concerned the speed at which a prudent driver should have traveled due to the conditions observed by him that evening.

II. Jury Instructions

■■■ Parties to lawsuits are entitled to have their legal theories submitted to a jury if they are supported by the pleadings and substantial evidence in the record. *Sanders v. Ghrist*, 421 N.W.2d 520, 522 (Iowa 1988). Iowa law requires a court to give a requested jury instruction if it correctly states the applicable law and is not embodied in other instructions. *Stover v. Lakeland Square Owners Ass'n*, 434 N.W.2d 866, 868 (Iowa 1989). However, error in refusing to give a requested instruction does not warrant reversal unless it is prejudicial to the party. *Id.* We will not reverse for marginal or technical omissions, but the instructions must thoroughly and fairly convey the law applicable to the issues presented. *Sanders*, 421 N.W.2d at 522. It is the trial court's duty to see that a jury has a clear and intelligent understanding of what it is to decide. *Id.* When weighing sufficiency of evidence to support a requested instruction, we construe the evidence in a light most favorable to the party seeking submission. *Coker v. Abell–Howe Co.*, 491 N.W.2d 143, 150 (Iowa 1992).

A. Duty to Avoid Oncoming Vehicle in Wrong Lane

■■■ Sonneks argue that Instruction No. 10 on "proper lookout," as given by the court, is fatally defective because it omitted a proposition of Iowa law which they were entitled to have the jury consider. They claim that as part of the duty of proper lookout a motor

vehicle driver must "try to avoid a collision with a vehicle traveling or positioned on the wrong side of the road." To omit this from the instruction, they assert, scuttled their case because that was the essence of the claim that defendant Warren was negligent. The claimed negligence of Warren was in not turning to the right or onto the dirt shoulder of the road in order to avoid a collision.

We have considered aspects of this argument in prior cases involving contributory negligence. In *Buzick v. Todman,* 179 Iowa 1019, 1020, 162 N.W. 259, 260 (1917), plaintiff claimed damages to his horse and buggy when a collision occurred at an intersection with defendant's auto. In analyzing the sufficiency of the evidence to support a plaintiff's verdict we said:

> The automobile, then, must have been a little more than 50 feet east of the horse when plaintiff's son first observed it approaching, and little less than that when he observed it begin veering to the south. Though fully aware that it was moving toward him, plaintiff's son made no effort to avoid it. He neither stopped his horse nor turned to the right or left, but allowed his horse to walk on until its leg was broken by coming in contact with the front spring of the automobile.

> We are of the opinion that, though defendant may have been negligent, plaintiff's son also failed to exercise any care to obviate the collision, and because of this was guilty of contributory negligence.

*Buzick,* 179 Iowa at 1025, 162 N.W. at 261. We reversed and ordered a new trial.

*Carruthers v. Campbell,* 195 Iowa 390, 391, 192 N.W. 138, 138 (1923), involved a two-car intersection accident where both vehicles were making right angle turns. On the issue of respective duties of the drivers we said:

> It appears that the beaten path at this point is on or near the east margin of the graded space between the ditches on either side of the road, and that between the beaten path and the west ditch there was a clear space of ten feet or more, over which a car coming from the north could turn out, if met by another vehicle. Under such circumstances, if proved, it cannot be said, as a matter of law, that a driver moving south is free from negligence simply because he keeps to the beaten path on the east side, to the injury of another car rightfully going north. In this case, the jury could properly find that plaintiff was on the right side of the road. This would not, of course, justify him in failing to use reasonable care to avoid a collision with defendant, even though the latter were on the wrong side; but whether he was negligent in this respect was quite clearly a jury question.

*Carruthers,* 195 Iowa at 392, 192 N.W. at 139. The jury verdict awarding plaintiff damages was affirmed.

In *Ehrhardt v. Ruan Transport Corp.,* 245 Iowa 193, 195, 61 N.W.2d 696, 697 (1953), two trucks collided on a narrow highway. The evidence was inconclusive as to which driver was encroaching on the other driver's half of the road. *Id.,* 245 Iowa at 200, 61 N.W.2d at 700. Regarding the plaintiff's attempt to avoid a collision by pulling to the right we said:

> However, here it must be quite clear that the only testimony tending to prove that plaintiff had lost control of his vehicle was that he had attempted to turn to the right and get over onto the right shoulder of the highway when meeting the other vehicle. This is the very thing required of one when meeting another on the public highway and especially so when there is danger of a collision. Failure to do so could result in a finding that one is guilty of contributory negligence. In plaintiff's effort here we find no substantial element of negligence, and certainly none that would justify its submission to the jury on the issue of lack of control.

*Ehrhardt,* 245 Iowa at 199, 61 N.W.2d at 699–700.

The trial court gave the uniform instruction on proper lookout in instruction No. 10. Regarding the duties of defendant Warren the court also instructed as follows: "A driver must have her vehicle under control. It is under control when the driver can guide and direct its movement, control its speed and stop it reasonably fast."

The court gave the following instruction concerning negligence:

"Negligence" means failure to use ordinary care. Ordinary care is the care which a reasonably careful person would use under similar circumstances. "Negligence" is doing something a reasonably careful person would not do under similar circumstances, or failing to do something a reasonably careful person would do under similar circumstances.

Concerning road conditions, the following instruction was given:

Road conditions may be such that speed should be less than the legal limit. Traffic laws call for the minimum of care and not the maximum. A driver should not operate a vehicle up to the legal speed limit of 35 miles per hour if the circumstances are such that ordinary care requires a lesser speed. A violation of this law is negligence.

The instruction requested by plaintiffs Sonnek sought to add an action-oriented duty to the "proper lookout" instruction approved as a uniform instruction by our court and given by the trial court. As such, we find that it departed from the concept of "proper lookout" adopted in the uniform instruction and by our cases.

In defining "proper lookout," we said in *Coker*, 491 N.W.2d at 151, "Maintaining a proper lookout encompasses the duty to be careful of the movements of one's self in relation to things seen and that could have been discerned or seen in the exercise of due care." In *Diehl v. Diehl*, 421 N.W.2d 884, 887 (Iowa 1988), we described it as follows:

The duty to maintain a proper lookout includes being watchful of the movements of one's own vehicle as well as other things seen or seeable.

. . . .

The common-law duty of control requires the operator of a motor vehicle to proceed with such care and with the vehicle under such control as existing conditions known or which should be known may require.

In *Diehl* we cited *Matuska v. Bryant*, 260 Iowa 726, 733–34, 150 N.W.2d 716, 721 (1967), for this proposition. *Matuska* considered and rejected the claim that the plaintiff was not keeping a proper lookout and was negligent as a matter of law in not seeing defendant's car until it was too late to take evasive action. As bearing on this, *Matuska* approved the statement made in *Menke v. Peterschmidt*, 246 Iowa 722, 730, 69 N.W.2d 65, 71 (1955), that:

A good deal of time was used on the trial and considerable space is taken up in the printed arguments concerning whether she saw or could have seen appellee approaching from a greater distance than she admitted. The matter is not material. Whether she saw him at 75 feet, 150 feet, or 600 feet, she was not bound to apprehend at any of those distances that he would not stop, or at least take some steps to yield the right-of-way in accordance with law.

Similarly, in *Appleby v. Cass*, 211 Iowa 1145, 1150, 234 N.W. 477, 479 (1931), we approved as part of an instruction the statement: "In the use of the highway, the driver of an automobile is not called upon to anticipate negligence upon the part of the driver of another automobile while using such public highway."

In a proper case, the requirement argued by plaintiffs Sonnek as a defendant's responsibility may be supported by enough evidence to support a separate instruction. However, in the case at bar, the concept offered by plaintiffs as a part of the "proper lookout" instruction is not compatible with that instruction and was correctly rejected by the trial court.

### B. Last Clear Chance Instruction in Consortium Suits

■ With our adoption of comparative negligence in *Goetzman v. Wichern*, 327 N.W.2d 742, 744 (Iowa 1982), and the subsequent modified codification of that doctrine by our legislature in 1984, the doctrine of last clear chance was abolished from Iowa jurisprudence. In *Bokhoven v. Klinker*, 474 N.W.2d 553, 556–57 (Iowa 1991), we held "the doctrine of last clear chance, even when considered a part of proximate cause, has no further function to perform where contributory negligence is no longer a complete bar to plaintiff's recovery." The doctrine's chief

purpose was to ameliorate the harsh effects of the doctrine of contributory negligence. *Id.* at 556; *see also* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 66, at 464 (5th ed. 1984).

In the case at bar, the Sonneks propose a new application of the last clear chance doctrine. They refer to our decision in *Schwennen v. Abell*, 430 N.W.2d 98, 101–03 (Iowa 1988). In *Schwennen* we held that in cases involving claims for lost consortium, the fault of a tort-feasor spouse cannot be imputed to the innocent deprived spouse, even for the purpose of allocating fault among multiple tort-feasors in order to reduce liability. *Schwennen*, 430 N.W.2d at 102.

The Sonneks believe the last clear chance doctrine should be utilized to diminish the efforts on the part of consortium defendants to shift the jury's focus away from their conduct and toward the tort-feasor spouse's conduct. A last clear chance instruction would, they argue, bring the jury's focus "back where it belongs: on the negligence of the defendant...." Accordingly, the Sonneks assert the trial court should have included a last clear chance instruction to the jury.

The Sonneks reason further that the import of our decision in *Bokhoven* does not apply where we held that the doctrine of last clear chance was subsumed by the adoption of comparative fault. *Bokhoven*, 474 N.W.2d at 557. The Sonneks point out that the instant case does not involve comparative fault because under *Schwennen* there is no imputation of an injured spouse's fault to the deprived spouse who claims consortium damages. Thus, they reason, the last clear chance doctrine should not be denied consideration by contributory negligence or comparative fault rationales that have no bearing on the consortium issue in the instant case.

Although this contention places the legal principles in proper order, we believe a misdirection comes from an attempt to apply the last clear chance doctrine to a consortium damages claim. The doctrine originated as a mechanism for avoiding the harsh effects of the contributory negligence doctrine. *Bokhoven*, 474 N.W.2d at 556. With the demise of that doctrine, no bar to the Sonneks' re-covery could come from that source. Nor would the principle of comparative fault bar their recovery. Thus, there is no need to assist the viability of plaintiffs' claim by resort to an otherwise outmoded doctrine of law.

Further, we believe a last clear chance instruction would unduly promote the consortium plaintiffs' evidence and legal theories to the further prejudice of defendants. In *Rosenau v. City of Estherville*, 199 N.W.2d 125, 133 (Iowa 1972), we stated:

> We have recognized that instructions should not give undue emphasis to any phase of the case favorable to either side, and even correct statements of the law, if repeated to the point of undue emphasis, may constitute reversible error.

*See also Coker*, 491 N.W.2d at 148.

Finally, we have faith that jurors are capable of focusing their evaluation of a case on the proper subject, even in the event they become aware of the possible fault of another person, not party to the instant litigation. Moreover, sound evidentiary rulings and a procedurally proper trial ought to ensure that the jury's focus will not be diverted. The trial court properly rejected the Sonneks' requested last clear chance instruction.

### III. Exclusion of Lay Witness Testimony

▮▮▮ The receipt of lay opinion testimony is a matter resting in the discretion of the trial court. *Renze Hybrids, Inc. v. Shell Oil Co.*, 418 N.W.2d 634, 639 (Iowa 1988). We will not interfere with a trial court's ruling on the admissibility of opinion evidence unless there exists a manifest abuse of that discretion. *Id.*

▮▮▮ Lay opinion testimony is admissible if it is: (a) rationally based on the witness's perception; and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue. Iowa R.Evid. 701. Lay opinion will be excluded if the factual foundation for the opinion is inadequate. *Hegtvedt v. Prybil*, 223 N.W.2d 186, 189 (Iowa 1974).

▮▮▮ The Sonneks contend the trial court erred in excluding the testimony of a police officer regarding the speed at which a pru-

dent driver should have been traveling at the time and place of the accident. They contend Officer Hull had special knowledge of the conditions and area at the approximate time of the accident which qualified him to give his opinion regarding what speed was safe at the time and place of the accident. On the other hand, defendant Warren contends Hull gained his special knowledge through observation of circumstances dissimilar to those existing at the time and place of the accident.

The trial court excluded officer Hull's testimony regarding the speed at which a prudent driver should have been traveling at the time and place of the accident. The record indicates weather conditions that evening were rapidly changing. Warren testified the roads were not icy at the time of the accident. Hull's contrary observations at the scene took place several minutes after the accident occurred. Hull was not present at the time and place of the accident. Hull's other observations regarding weather conditions and appropriate speed of travel were made away from the scene, before the accident occurred.

Under this record, we do not feel the trial court abused its discretion in excluding Hull's testimony. Where a lay witness opinion is based on observations of circumstances dissimilar to those existing at the time and place of the accident, it is not an abuse of discretion to exclude the testimony. *Wadle v. Jones*, 312 N.W.2d 510, 515 (Iowa 1981). The trial court could have properly concluded such testimony would confuse, rather than assist the jury. *Id.* The Sonneks' argument regarding the exclusion of Officer Hull's testimony is without merit.

IV. Conclusion

Our examination of the issues presented by this appeal results in a finding that no reversible error has occurred. The trial court's entry of judgment pursuant to the jury verdict in favor of defendant Warren is affirmed.

**AFFIRMED.**