**STATE of Iowa, Appellee,**

v.

**Clifford Joseph KINSEL, Appellant.**

**No. 94–648.**

Court of Appeals of Iowa.

Feb. 2, 1996.

---

Linda Del Gallo, State Appellate Defender, and Ahmet S. Gonlubol, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Julie H. Brown, Assistant Attorney General, and Thomas J. Ferguson, County Attorney, for appellee.

Heard by HAYDEN, P.J., and CADY, and HUITINK, JJ.

CADY, Judge.

Clifford Kinsel appeals his conviction and sentence for second-degree murder. We affirm.

The life of Herlie Johnson, Jr. ended August 18, 1993 after he was struck by a pickup truck driven by Clifford Kinsel while walking on a sidewalk in Waterloo. A jury subsequently convicted Kinsel of second-degree murder. He was sentenced to a term of incarceration not to exceed fifty years.

The important facts of the case begin during the early morning hours of August 18, 1993. Kinsel was driving his truck near West Second and Commercial Streets in Waterloo, an area known to be a hangout for prostitutes. At approximately 12:30 a.m., Kinsel stopped his truck and picked up a prostitute, but dropped her off at the corner of West Second and Commercial Street a short time later, after telling her he would return after obtaining some money from his sister.

Kinsel was observed driving his truck in the same area a short time later, where he picked up another prostitute, Sonya Harmon. Kinsel informed Harmon he only had $14.45 and requested a sex act. Harmon agreed to the request and Kinsel parked his truck in a nearby parking lot. Harmon testified she engaged in vaginal intercourse with Kinsel for a few minutes, but stopped before Kinsel completed the act. She dressed and left. To the contrary, Kinsel testified Harmon accepted the money and told him she needed to go to the bathroom prior to engaging in the sex act. Kinsel said Harmon then ran away with the money.

Two witnesses observed Harmon walk quickly along Commercial Street, while looking nervously over her shoulder. Witnesses then saw Kinsel pull his pickup into the entrance of a parking lot and block Harmon's path. They also heard Kinsel yell "bitch, I'm going to get you." Harmon walked around Kinsel's truck and continued along Commercial Street toward West Seventh Street. Kinsel sped across the parking lot, turned into an alley, and onto West Second Street. Kinsel then drove slowly along West Second Street. Harmon, who had also reached West Second Street, was standing on the adjacent sidewalk, hugging Herlie Johnson as Kinsel drove by.

Kinsel drove to the corner of West Second and Commercial Streets, made a fast, sharp U-turn, jumped the curb, and gunned his truck down the sidewalk in the direction of Harmon and Johnson. Harmon jumped from the path of the approaching pickup. Johnson, however, was unable to do the same. The truck struck Johnson, bouncing up as it ran over his leg. Kinsel made no attempt to swerve or brake his truck, but appeared to accelerate as he drove down the sidewalk. Eyewitnesses and investigators estimated the truck was traveling 25–35 mph down the sidewalk.

At trial, Kinsel admitted he drove his truck down the sidewalk, but testified he was unaware he struck anyone. He said he drove down the sidewalk only after failing to successfully complete the U-turn, and was sim-

ply looking for Harmon to get his money from her.

One of the investigating law enforcement officers was John Woods. He arrived on the scene at approximately 3:45 a.m., well before sunrise. He was asked numerous questions at trial about the lighting conditions in the area and the ability to see people. On re-cross examination by defense counsel, Woods was again asked about the lighting conditions in the area, with several questions directed to his ability to observe a person standing next to a child's bicycle in the background of a photograph of the sidewalk taken during the early morning hours of August 18. The photograph was admitted into evidence as an exhibit and published to the jury. On further examination by the prosecutor, Woods testified, over objections by defense counsel, he would have been able to stop without hitting "the person" if he were driving down the sidewalk. He also testified over objection he would have been able to see "the person."

On appeal, Kinsel argues insufficient evidence exists to support his conviction for second-degree murder. He also claims the trial court erred in permitting officer Woods to opine he could have avoided hitting a person on the sidewalk and could have seen the person. Finally, Kinsel claims his trial counsel rendered ineffective assistance by failing to object to the exclusion of the lesser included offense of voluntary manslaughter from the jury instructions.

## I. Sufficiency of Evidence

■ Our review is for errors at law. Iowa R.App. p. 4. A verdict of guilty is binding upon us unless there is no substantial evidence in the record to support it, or it is clearly against the context of the evidence. *State v. Schrier,* 300 N.W.2d 305, 306 (Iowa 1981). Substantial evidence means such evidence as could convince a rational trier of fact the defendant is guilty beyond a reasonable doubt. *Id.* In determining sufficiency of evidence, we view the record in a light most favorable to the State. *State v. Robinson,* 288 N.W.2d 337, 340 (Iowa 1980). All evidence is examined not simply the evidence which supports the verdict. *Id.*

■ Kinsel first argues the evidence did not support a finding of malice to sustain the conviction for second-degree murder. He points out there was no evidence he saw Johnson while driving down the sidewalk and, consequently, could only be guilty of manslaughter or homicide by vehicle. He argues the lack of evidence he hid or covered up the crime also supports his lack of malice.

■ We find substantial evidence to support the conviction. Malice may be established by proof of a deliberate or fixed intent to do injury. *State v. Nunn,* 356 N.W.2d 601, 603 (Iowa App.1984). It may be found from the acts and conduct of the defendant, as well as the means used to do the wrongful and injurious act. *Id.*

Here, the jury could reasonably have found Kinsel became angry at Harmon shortly before the incident and acted with malice aforethought when he drove his truck down the sidewalk. There was ample evidence to conclude beyond a reasonable doubt Kinsel saw Harmon and Johnson on the sidewalk and intended to do physical harm to one or both of them before his truck left the street and entered the sidewalk.

■ We are not persuaded by Kinsel's argument that his failure to conceal his truck after the incident negates a finding of malice. We acknowledge the lack of concealment is a factor to consider, but does not preclude a finding of malice in view of all the other circumstances.

■ Kinsel also claims he cannot be guilty of murder under the facts of this case because the legislature preempted the subject of motor vehicle homicide by the passage of Iowa Code section 707.6A(1)(b) (1993). This argument, however, is premised on his claim that the facts do not support a finding of malice. We have rejected this premise. The homicide by vehicle statute applies to situations involving unintentional death, while the statutes defining murder apply to intentional wrongdoing. The State is not prohibited from charging murder simply because an automobile was the instrument used to commit the crime. *See State v. Perry,* 440 N.W.2d 389, 391–92 (Iowa 1989).

## II. Opinion Testimony

The admissibility of evidence at trial generally lies within the discretion of the trial court as framed by the rules of evidence. *See State v. Williams*, 305 N.W.2d 428, 432 (Iowa 1981). We will not reverse absent an abuse of discretion. *State v. Hubka*, 480 N.W.2d 867, 868 (Iowa 1992). Moreover, a manifest abuse of discretion must be found before we will interfere with a trial court's ruling on the admissibility of opinion testimony. *Sonnek v. Warren*, 522 N.W.2d 45, 50 (Iowa 1994).

Kinsel claims the questions put to officer Woods concerning his ability to see persons on the sidewalk and avoid hitting them called for improper opinion testimony, as well as irrelevant evidence.[1] Lay witnesses may give opinion testimony, but only when the opinions or inferences are: (a) rationally based on the perception of the witness; and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue. Iowa R.Evid. 701; *Sonnek v. Warren*, 522 N.W.2d at 50.

This rule of limitation is derived from the long-standing preference for testimony to be presented in the form of "facts" and not "opinions". *See* John William Strong, McCormick on Evidence § 11 (4th ed. 1992). In practice, however, the distinction between fact and opinion can be blurred, and even the most specific and detailed statements are in some measure the product of inference and reflection, as well as observation and memory. *Id.* This subtlety helps explain the wide range of discretion accorded trial courts. *Id.*

We are unable to conclude the trial court abused its discretion. The opinions were largely fact-based, and focused on the ability to observe people on the sidewalk at the time of the incident, not the ability of Kinsel to stop his vehicle or to otherwise take action to avoid striking Johnson. *See Krueger v. State Farm Mut. Auto Ins. Co.*, 707 F.2d 312, 316–17 (8th Cir.1983). The ability to observe under the limited lighting conditions was the focus of the preceding questioning of Woods. The "opinions" expressed by Woods were based on his perceptions, and were helpful in determining the fact issue whether Kinsel could have observed Harmon or Johnson as he drove his pick-up truck on the sidewalk. The lighting conditions at the time of the incident were similar to the time Woods conducted his investigation. The trial court acted within its discretion in permitting the opinion testimony of officer Woods.

## III. Effective Assistance of Counsel

We are generally unable to adjudicate claims of ineffective assistance of trial counsel on direct appeal. *State v. Rawlings*, 402 N.W.2d 406, 408 (Iowa 1987). This is done only in rare cases. *Id.*

We believe the issue of failing to request a jury instruction on voluntary manslaughter should be preserved for postconviction proceeding. Voluntary manslaughter is a statutorily-mandated lesser included offense of murder in the first-degree. Iowa Code § 707.4 (1993). We are unable to conclude the evidence would not have supported the instruction.

## IV. Conclusion

We conclude substantial evidence supports the jury verdict, and the trial court did not err in admitting the opinion testimony of officer Woods. We preserve Kinsel's claim of ineffective assistance of counsel.

**AFFIRMED.**

---

1. Kinsel also objected to the questions based on "no foundation" and "invades the province of the jury." These objections are generally insufficient to alert the trial judge to the problem and to preserve error. *See U.S. Homes, Inc. v. Yates*, 174 N.W.2d 402, 405 (Iowa 1970); *State v. Hines*, 223 N.W.2d 190, 191 (Iowa 1974).