# IN THE COURT OF APPEALS OF IOWA

No. 16-0628
Filed November 8, 2017

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**JAMES ERNST II,**
        Defendant-Appellant.

_____

Appeal from the Iowa District Court for Black Hawk County, Andrea J. Dryer, Judge.

A defendant appeals his conviction and sentence for first-degree murder in violation of Iowa Code section 707.2 (2015). **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Melinda J. Nye, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Linda J. Hines, Assistant Attorney General, for appellee.

Heard by Doyle, P.J., McDonald, J., and Goodhue, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2017).

**MCDONALD, Judge.**

James Ernst II appeals his conviction for murder in the first degree, in violation of Iowa Code section 707.2 (2015), arising out of the shooting of Orintheo Campbell, Jr. At trial, Ernst claimed he shot Campbell in self-defense. The jury rejected Ernst's defense and found him guilty as charged. Ernst raises several challenges to his conviction and sentence in this direct appeal.

I.

The record reflects the following. On the evening of December 5, 2014, Ernst rented a white Lincoln MKX in Cedar Rapids and drove to Waterloo accompanied by his friend Iviontae Jackson. Around 1:00 a.m., Jackson and Ernst met up with friends Shaumara Taylor and Katie Werner. For a reason never resolved at trial, the group stopped at a local convenience store. At the convenience store, Taylor got in a physical fight with a woman, Angela Norris, who had arrived at the convenience store in another car. Campbell was also at the convenience store. Campbell and his friends stopped to watch the fight between Taylor and Norris. One of Campbell's friends called other people about the fight; before long, there was a group of over fifteen people surrounding the combatants. Ernst testified he did not know anyone in this crowd except his three friends. The fight was recorded by the store's security camera.

The fight between Taylor and Norris subsided after members of the crowd intervened. However, after several minutes, the two began fighting again. The second fight was not in the view of the security camera. What happened next is the subject of dispute.

According to the State's witnesses, one of the bystanders, the father of Norris's child, tried to pull Taylor away from Norris. There was a verbal argument between some of the men watching the fight, Ernst fired his handgun, and Campbell was shot and killed. None of the State's witnesses observed any physical fighting between the men.

According to Ernst, Ernst saw a man push Taylor in an attempt to break up the fight. Ernst then grabbed Taylor to drag her away from the fight. As Ernst dragged Taylor away from the fight, she continued to argue with the man who had pushed her. As Ernst approached his car, he heard a cocking sound, turned, and saw two men with their hands at their waists. Ernst testified he held up his hand and said, "Stop, this is just a girl fight. This ain't got nothing to do with me." One of the men, later identified as Campbell, allegedly replied, "No, fuck that. I'm Crip. I'm on that." Campbell then punched Ernst in the jaw, stepped back, and reached toward his belt. Ernst had a permit to carry a concealed weapon and had a gun on his person. Ernst pulled out his handgun and fired five shots at Campbell at close range. Ernst claims he aimed low to disable Campbell but recoil forced the gun higher. Ernst stopped firing when he saw Campbell put his hand to his chest. Ernst and his three friends fled the scene.

After Ernst fled the scene, Campbell's friends drove Campbell to a local hospital. He was pronounced dead shortly after arrival at 1:51 a.m. Campbell had been shot twice, once in the chest and once in the neck. Meanwhile, Ernst returned to Taylor's apartment for roughly thirty minutes before leaving town with Jackson. Ernst went to Dubuque to visit a female friend. He then drove to

Davenport to visit his sister. Finally, he returned to Cedar Rapids. The State alleged Ernst attempted to evade police for some period of time after the shooting. Ernst denied this. Regardless, the police were unable to locate Ernst for several weeks. Ultimately, Ernst was arrested January 1, 2015, for the murder of Campbell.

## II.

Ernst raises four challenges to his conviction and sentence. He contends: 1) the district court erred in not admitting PowerPoint slides regarding the training Ernst received when he obtained his firearms permit, 2) the district court erred in declining a proposed jury instruction regarding malice aforethought, 3) defense counsel was ineffective in failing to object to instances of prosecutorial misconduct, and 4) the district court erred in ordering restitution.

## A.

In his first claim of error, Ernst raises an evidentiary issue. Ernst argues the district court erred in excluding a PowerPoint presentation Ernst viewed when he obtained his concealed carry permit. The presentation contained over 100 slides. Ernst contends the slides were relevant to show Ernst was trained to carry his firearm with him rather than leave it lying around. The district court sustained the objection to the presentation because the slide contained a large amount of irrelevant and potentially confusing information, including statements of Utah and Iowa law.

This court reviews the district court's evidentiary ruling for an abuse of discretion. *See Mercer v. Pittway Corp.*, 616 N.W.2d 602, 612 (Iowa 2000). We will find an abuse of discretion when "the court exercised [its] discretion on

grounds or for reasons clearly untenable or to an extent clearly unreasonable." *Waits v. United Fire & Cas. Co.*, 572 N.W.2d 565, 569 (Iowa 1997) (alteration in original) (quoting *State v. Maghee*, 573 N.W.2d 1, 5 (Iowa 1997)). "A ground or reason is untenable when it is not supported by substantial evidence or when it is based on an erroneous application of the law." *Id.* Harmless error occurs in cases where a substantial right of the challenging party is unaffected. *Mercer*, 616 N.W.2d at 612 (citing *McClure v. Walgreen Co.*, 613 N.W.2d 225, 235 (Iowa 2000)); *see* Iowa R. Evid. 5.103(a).

Relevance is the guiding consideration in the admission of evidence. *See* Iowa R. Evid. 5.402. Relevant evidence is "evidence having any tendency to make the existence of any fact . . . more probable or less probable than it would be without the evidence." Iowa R. Evid. 5.401. "The test to determine if evidence is relevant is whether a reasonable [person] might believe the probability of the truth of the consequential fact to be different if [such person] knew of the proffered evidence." *State v. Alberts*, 722 N.W.2d 402, 410 (Iowa 2006) (alteration in original) (citation omitted) (citing *State v. Plaster*, 424 N.W.2d 226, 229 (Iowa 1988)). Relevant evidence may still be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *See* Iowa R. Evid. 5.403.

To the extent Ernst claims the district court abused its discretion in excluding the entirety of the PowerPoint presentation, we disagree. The district court reasoned:

> The jury gets instructions that tell them to consider the evidence in
> the case and the instructions. If I allow this in as evidence, they're
> considering it along with my instructions because that's what the

instructions tell them to do. We can't have evidence that's giving the jury laws that would be contrary to or potentially contrary to the laws of the State of Iowa that they're going to be getting in the instructions.

The district court correctly decided the entirety of the PowerPoint presentation. It contained too much irrelevant, confusing, and misleading information, including statements of law contrary to the jury instructions.

Ernst argues that even if the entirety of the presentation was correctly excluded from evidence, the district court should have admitted the non-legal slides. Specifically, there were several slides showing a permit holder should keep his or her firearm secure and in his or her possession. Error is not preserved on this issue. After the district court ruled the entirety of the PowerPoint presentation should not be admitted into evidence, Ernst's counsel did not pursue the issue further. Counsel did not offer into evidence a redacted presentation containing only the specific slides at issue and obtain a ruling on the admissibility of the same. Accordingly, error is not preserved. *See Quad City Bank & Trust v. Jim Kircher & Assocs., P.C.*, 804 N.W.2d 83, 91–92 (Iowa 2011) (holding error not preserved where testimony and exhibits were not offered and the district court thus never ruled on the admissibility of the evidence).

Ernst contends his counsel provided constitutionally deficient representation in failing to offer the non-legal slides into evidence. We review de novo claims of ineffective assistance of counsel. *Everett v. State*, 789 N.W.2d 151, 155 (Iowa 2010). To succeed on an ineffective-assistance claim a defendant must show "(1) counsel failed to perform an essential duty; and (2) prejudice resulted." *State v. Maxwell*, 743 N.W.2d 185, 195 (Iowa 2008). With

respect to the first element, "we measure counsel's performance against the standard of a reasonably competent practitioner." *Id.* Poor strategy or mistakes in judgment normally do not rise to the level of ineffective assistance. *See Ledezma v. State*, 626 N.W.2d 134, 143 (Iowa 2001). Counsel's failure to offer evidence can be the basis for an ineffective assistance claim. *See King v. State*, 797 N.W.2d 565, 576 (Iowa 2011); *Millam v. State*, 745 N.W.2d 719, 721 (Iowa 2008) ("[W]e conclude Millam's counsel failed in an essential duty by not offering evidence of J.S.'s prior false claims of sexual abuse."). With respect to the second element, prejudice exists if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Leckington*, 713 N.W.2d 208, 217 (Iowa 2006). "Both elements do not always need to be addressed. If the claim lacks prejudice, it can be decided on that ground alone without deciding whether the attorney performed deficiently." *Ledezma*, 626 N.W.2d at 142.

Ernst has failed to establish constitutional prejudice. The issue of why Ernst was in possession of handgun was not in great dispute or of great significance at trial. The State did not dispute Ernst had a permit to carry a firearm. And, the slides at issue were duplicative of other evidence. The district court allowed Ernst to testify regarding the training he received when obtaining his permit. Ernst testified he was trained to carry his weapon with him at all times, when not secured, for safety reasons. He testified he had his weapon on his person "because being—having a permit to carry, I'm responsible for it." "Exclusion of evidence is not prejudicial error where the same facts are shown by other evidence." *State v. McClain*, 125 N.W.2d 764, 770 (Iowa 1964).

B.

Ernst contends the district court erred in denying his request to supplement the malice-inference instruction. "[W]hen a jury instruction implicates a constitutional right, our review is de novo." *State v. Green*, 896 N.W.2d 770, 775 (Iowa 2017). We review challenges to jury instructions that do not implicate a constitutional right for correction of errors at law. *Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 707 (Iowa 2016). "Iowa law requires a court to give a requested jury instruction if it correctly states the applicable law and is not embodied in other instructions." *Id.* (quoting *Sonnek v. Warren*, 522 N.W.2d 45, 47 (Iowa 1994)).

Instruction No. 21 provided, "Malice aforethought may, but is not required to, be inferred from the defendant's use of a dangerous weapon." This is model criminal jury instruction 700.10. Ernst requested the instruction be modified to include the additional sentence that "the inference can be overcome by evidence to the contrary showing a legal excuse such as self-defense." The district court denied the proposed modification on the ground that instructions regarding justification and self-defense were contained in other instructions.

We cannot conclude the district court erred in declining the proposed instruction. "Malice aforethought . . . is a term of art used to describe a culpable state of mind, an essential element of the offense of murder that the state must prove to the jury beyond a reasonable doubt." *Green*, 896 N.W.2d at 780. The uniform jury instruction has been approved as a correct statement of the law. *See id.* (stating "the jury may infer the defendant acted with malice aforethought by using a dangerous weapon, the natural consequence of which is physical

harm or death"). In the recent case of *Green*, the supreme court concluded the uniform jury instruction was correctly given even where the defendant relied on a justification defense. *See id.* at 781. The court reasoned a "defendant may argue the inference is improper because, even though the weapon was deadly, and even though the defendant intended the foreseeable consequences of using it, the defendant had adequate provocation or fear of imminent bodily harm to use the weapon." *Id.* Because the instruction given was correct and because the proposed language was contained in other instructions, the district court did not err in declining the proposed instruction. *See State v. Shanahan*, 712 N.W.2d 121, 140 (Iowa 2006) ("In evaluating a challenge to jury instructions, we consider the instructions as a whole and not separately."); *State v. Fintel*, 689 N.W.2d 95, 104 (Iowa 2004) (same).

## C.

In his third claim of error, Ernst contends his right to due process was violated when the prosecutor committed error or engaged in misconduct. First, Ernst contends the prosecutor misstated the law on justification during his closing argument. Specifically, Ernst takes issue with the State's arguments regarding whether Ernst had an alternate course of action. Second, Ernst argues the prosecutor made improper arguments during closing. In closing, the prosecutor stated the defense's witnesses, with the cooperation of defense counsel, watched the security camera video before testifying and "tailored" their testimony to fit the video. For example, the prosecutor directly stated, "Now [Jackson's] testimony is tailored." The prosecutor also attacked defense counsel, arguing, "And [Jackson] goes through step by step by step on direct examination with

defense counsel, and he answers every one of their questions. And is for the most part polite, knows the answers, isn't argumentative, walks through—remembers . . . . Of course, we only find out on cross-examination that he's been shown this video to which he can tailor his testimony, unlike the State's witnesses. We didn't try to get these people to tailor their testimony to the video."

To establish a due process violation, the defendant must establish prosecutorial misconduct or prosecutorial error. *See State v. Graves*, 668 N.W.2d 860, 869 (Iowa 2003). "Prosecutorial misconduct includes those statements 'where a prosecutor intentionally violates a clear and unambiguous obligation or standard imposed by law, applicable rule or professional conduct,' as well as 'those situations where a prosecutor recklessly disregards a duty to comply with an obligation or standard.'" *State v. Schlitter*, 881 N.W.2d 380, 394 (Iowa 2016) (citation omitted). Prosecutorial error, in contrast, occurs "'where the prosecutor exercises poor judgment' and 'where the attorney has made a mistake' based on 'excusable human error, despite the attorney's use of reasonable care.'" *Id.* (citation omitted). "A prosecutor who has committed error should not be described as committing misconduct." *Id.* "Evidence of the prosecutor's bad faith is not necessary, as a trial can be unfair to the defendant even when the prosecutor has acted in good faith." *Graves*, 668 N.W.2d at 869.

Whether the claim is one for prosecutorial misconduct or prosecutorial error, the defendant must establish the misconduct or error "resulted in prejudice to such an extent that the defendant was denied a fair trial." *Id.*; *see also Schlitter*, 881 N.W.2d at 394 (concluding the *Graves* standard applies whether the claim is prosecutorial misconduct or prosecutorial error). The prosecutor can

deny the accused a fair trial in a variety of ways. *See Schlitter*, 881 N.W.2d at 393 (identifying a "range of trial conduct" constituting prosecutorial misconduct). Whatever the conduct, "it is the prejudice resulting from misconduct, not the misconduct itself, that entitles a defendant to a new trial." *State v. Piper*, 663 N.W.2d 894, 913 (Iowa 2003), *overruled on other grounds by State v. Hanes*, 790 N.W.2d 545 (Iowa 2010).

Ernst's claims of prosecutorial misconduct/error raise significant issues. In closing arguments, prosecutors are given "some latitude" to analyze evidence and argue "reasonable inferences and conclusions to be drawn from the evidence," but we do not permit a prosecutor to "express his or her personal beliefs." *Graves*, 668 N.W.2d at 874. Iowa courts strongly disfavor accusations of attorney unethical conduct. *See State v. Webb*, 244 N.W.2d 332, 333 (Iowa 1976) ("Lawyers should avoid making statements before a jury which tend to prejudice a defendant's right to a fair trial. This is particularly true when one lawyer undertakes to accuse another of unethical conduct."). Prosecutors cannot make "inflammatory or prejudicial statements regarding a defendant in a criminal action." *Graves,* 668 N.W.2d at 874*.* A prosecutor "cannot instruct the jury on the law." *State v. Clay*, 824 N.W.2d 488, 497 (Iowa 2012). "The prosecutor also cannot misstate the law." *Shanahan*, 712 N.W.2d at 140. Additionally, "Iowa follows the rule that it is improper for a prosecutor to call the defendant a liar, to state the defendant is lying, or to make similar disparaging comments." *Graves*, 668 N.W.2d at 876. A prosecutor may craft an argument by making reasonable inferences and by asking the jury to make reasonable inferences, but the prosecutor must not make disparaging comments or vouch for or against a

witness's credibility. *See State v. Carey*, 709 N.W.2d 547, 556 (Iowa 2006). Other states have similar limitations on the scope of permissible argument with respect to arguing credibility. *See, e.g., Henry v. State*, 651 So. 2d 1267, 1268 (Fla. Dist. Ct. App. 1995) ("The implication by the prosecutor in this case was that the defense 'got to' the witness. That suggests that the defense was engaged in tampering with a witness and suborning perjury, both criminal offenses. Such a comment is highly irregular, impermissible, and prejudicial."); *State v. Hazley,* 19 P.3d 800, 804 (Kan. Ct. App. 2001) ("[T]his court has recognized the potential prejudice of a prosecutor's negative comments on the defendant's or defense counsel's credibility.")*; State v. Mayhorn*, 720 N.W.2d 776, 786 (Minn. 2006) ("We have held that it is improper for a prosecutor to give her own opinion about the credibility of a witness in closing argument."); *State v. Swanson*, 707 N.W.2d 645, 656–58 (Minn. 2006) (stating "[w]e hold, however, that the statement '[t]he state believes [Karol House] is very believable' is impermissible" and noting "[b]ecause the record contains neither evidence of tailoring nor any other reason for the state's argument, the prosecution''s questions and comments were error").

We are unable to resolve the claims in this direct appeal, however. Ernst's counsel did not contemporaneously object to the prosecutor's statements. The claims are raised in this appeal as claims of ineffective assistance of counsel. "[C]laims of ineffective assistance of counsel raised on direct appeal are ordinarily reserved for postconviction proceedings to allow full development of the facts surrounding counsel's conduct." *State v. Atley*, 564 N.W.2d 817, 833 (Iowa 1997). Here, trial counsel should be permitted the opportunity to explain the failure to object to the prosecutor's statements. There are potential strategic

considerations in not interposing an objection during closing argument, including a decision to avoid drawing attention to the prosecutor's remarks. We preserve the claims for further development in postconviction-relief proceedings.

D.

Ernst also challenges the sentencing order issued in this case. Specifically, he challenges the provision for restitution related to payment of court-appointed counsel's attorney's fees contained within the sentencing order.

The State contends the restitution order is not final and not subject to review. We disagree. Where the restitution provision is "contained in the sentencing order, it is part of the sentence that may be challenged at any time, whereas those matters that follow the entry of final judgment are collateral and must be separately appealed." *State v. Sanchez*, No. 13-1989, 2015 WL 4935530, at \*5 (Iowa Ct. App. Aug. 19, 2015); *see also State v. Formaro*, 638 N.W.2d 720, 727 (Iowa 2002) (distinguishing those situations where the terms and conditions of bail are contained in a judgment and sentence and are therefore subject to challenge on direct appeal with those situations in which the court addresses the issue of bail following the entry of a judgment and sentence and therefore the ruling must be separately appealed); *State v. Alspach*, 554 N.W.2d 882, 884 (Iowa 1996) (holding a defendant is entitled to court-appointed counsel when challenging restitution imposed as part of the original sentencing order and distinguishing restitution imposed in sentencing orders from later actions to modify a restitution plan, which are "civil in nature and not part of the criminal proceedings").

Our review of the order at issue is for the correction of legal error. *See State v. Jose*, 636 N.W.2d 38, 43 (Iowa 2001). The court considers "whether the district court's fact-findings lack substantial evidentiary support and whether the court correctly applied the law." *State v. Campbell*, No. 15-1181, 2016 WL 4543763, at *1 (Iowa Ct. App. Aug. 31, 2016) (citing *State v. Bonstetter*, 637 N.W.2d 161, 165 (Iowa 2001)).

We find no error in the district court's sentencing order. The district court set forth the categories of restitution and the amount to be paid. Specifically, the district court ordered the defendant to pay counsel's actual fees or the maximum fee authorized by statute, whichever is less. The district court found Ernst was reasonably able to pay up the maximum fee authorized by statute. *See* Iowa Code § 910.2(1). The finding was supported by substantial evidence.

III.

For these reasons, we affirm the conviction and sentence in this case.

**AFFIRMED.**