**Jerry D. THOMPSON, Appellant,**

v.

**CITY OF DES MOINES, Iowa, John Pat Dorrian, George Flagg, Preston Daniels, Tom Vlassis, Mike McPherson, Jack Porter, and Archie Brooks, Individually and as City Council Members, and Cy Carney, Individually and as City Manager, Appellees.**

No. 95–1833.

Supreme Court of Iowa.

June 18, 1997.

Brent R. Appel and Kimberley K. Baer of Dickinson, Mackaman, Tyler & Hagen, P.C., Des Moines, for appellant.

Thomas W. Foley and Thomas M. Zurek of Nyemaster, Goode, McLaughlin, Voigts,

West, Hansell & O'Brien, P.C., Des Moines, for appellee City of Des Moines.

Thomas D. Hanson of Hanson, Bjork & Russell, Des Moines, for appellees John Pat Dorrian, Tom Vlassis, Jack Porter, and Archie Brooks.

David A. Tank of Davis, Brown, Koehn, Shors & Roberts, P.C., Des Moines, for appellee Preston Daniels.

Charles E. Gribble of Roehrick, Hulting, Blumberg, Kirlin & Krull, P.C., Des Moines, for appellee George Flagg.

D. William Thomas of Duffy, Spellman, Ryan, Thomas & Clark, Des Moines, for appellee Mike McPherson.

Randolph Duncan of Duncan, Green, Brown, Langeness & Eckley, P.C., Des Moines, for appellee Cy Carney.

Considered by McGIVERIN, C.J., and CARTER, LAVORATO, NEUMAN, and TERNUS, JJ.

NEUMAN, Justice.

When the City of Des Moines reorganized its management structure in 1993, plaintiff Jerry Thompson lost the job of employment relations director that he had held for eighteen years. Claiming the reorganization was a mere sham to circumvent his contractual rights, Thompson sued the city and its mayor, manager, and council members on theories of breach of contract, tortious interference with contractual relationship, conspiracy, and violation of due process. Most of Thompson's theories were decided adversely to him by way of summary judgment; the remaining count—a contractual claim related to seniority and "bumping" rights upon layoff—was rejected by a jury. On Thompson's appeal from summary judgment for the defendants and denial of his motion for a new trial, we affirm.

■ I. Before turning to the facts, we pause briefly to address Thompson's overarching claim that the case—being fact intensive—cannot properly be resolved by summary judgment. It is true that summary judgment is properly granted only when the moving party demonstrates (1) the absence of any genuine issue of material fact, and (2) entitlement to judgment as a matter of law. Iowa R. Civ. P. 237(c); *Anderson v. Douglas & Lomason Co.*, 540 N.W.2d 277, 281 (Iowa 1995). Fact issues are material, however, only when the dispute over them might affect the outcome of the suit. *Junkins v. Branstad*, 421 N.W.2d 130, 132 (Iowa 1988). If the conflict in the record concerns only the legal consequences flowing from undisputed facts, entry of summary judgment is proper. *Farm Bureau Mut. Ins. Co. v. Milne*, 424 N.W.2d 422, 423 (Iowa 1988).

Our task on appeal is not to weigh evidence but to determine whether a genuine issue of material fact exists and whether the district court correctly applied the law. *Junkins*, 421 N.W.2d at 132. We are obliged to review the record in the light most favorable to the party resisting summary judgment. *Id.* at 132–33. The resister, however, "may not rest upon the mere allegations or denials of his pleading." Iowa R. Civ. P. 237(e). Thus we have said:

> The resistance must set forth specific facts which constitute competent evidence showing a *prima facie* claim. By requiring the resister to go beyond generalities, the basic purpose of summary judgment procedure is achieved: to weed out "[p]aper cases and defenses" in order "to make way for litigation which does have something to it."

*Fogel v. Trustees of Iowa College*, 446 N.W.2d 451, 454 (Iowa 1989) (citations omitted).

With these principles in mind we turn to the record made before the district court.

II. In 1974, Thompson left his job as assistant county administrator in Muskegon, Michigan, to become Des Moines' employee relations director. The appointment was non-civil service, full time and permanent in nature. According to an employee handbook then in existence, "permanent appointment" meant "[a]n appointment you receive if the City plans to engage your services for an indefinite period." Thompson accepted the job and moved his family here on assurances from former city manager Richard Wilkey that he would enjoy long-term job security.

Throughout his career with the city Thompson served as its chief collective bargainer. He developed a reputation as a tough negotiator, with an aggressive style at the bargaining table. His performance, though generally regarded as satisfactory from the city's perspective, created some friction with union leadership.

In 1993 the city faced a budget shortfall in excess of $4 million. The city manager, defendant Cy Carney, proposed the elimination of eleven management positions—including Thompson's—intended to generate annual salary savings of $630,000. Under the proposal, Thompson's duties would be absorbed by personnel staff within the city manager's office and the city's risk management department. The mayor and city council members approved the reorganization by a unanimous vote.

Thompson was notified of the reorganization and elimination of his position in June 1993. Although Carney at first advised Thompson no other positions in city government were available, a month later he encouraged Thompson to consider his seniority and "bumping" rights relative to two positions for which he qualified: assistant employment relations director and personnel analyst. Thompson declined the offer.

Thompson sued the city and its mayor, manager, and council members, individually, in an amended petition containing nine alternative theories of recovery. Briefly stated, Thompson alleged breach of oral and written contracts of employment; tortious interference by city council members and the city manager with his contractual relationship with the city; a cause of action under 42 U.S.C. § 1983 for deprivation of a protected property right without due process; breach of contractual right to "bump" into another position at the same salary level; unlawful "demotion" without hearing in violation of due process guarantees; violation of state and federal age discrimination statutes; and conspiracy to violate Thompson's contractual rights.

Following extensive discovery, the city and individual defendants moved for summary judgment. They claimed the record could not support the alleged contractual promises, tort theories, and constitutional claims Thompson advanced and, in any event, the city's employee handbook permitted layoffs made necessary by budgetary constraints and organizational changes. Thompson resisted by claiming the budget shortfall was contrived to cover up improper motives by council members and the city manager who, bowing to pressure from the unions, wanted him ousted. He supported his resistance with a string of factual scenarios—about one per year for the period 1987 to 1993—that purported to demonstrate his conspiracy theory. These vignettes, viewed in the light most favorable to Thompson, may be summarized as follows:

- In 1987, following particularly heated negotiations over public employee union salary increases in which Thompson raised the specter of layoffs, union representatives began making what Thompson characterized as "end run" appeals around city management to negotiate directly with members of the city council.

- In 1989, union representatives directly appealed to the mayor and city council to restrict negotiations relative to health care benefits. The city council passed a resolution in conformity with the request.

- When, in 1991, Thompson introduced the issue of health benefits at the bargaining table, he was told by the city manager to drop the matter because it had no support among council members. Although Thompson believed this "end run"—like the others—amounted to a prohibited practice under Iowa Code section 20.10(3)(b) and revealed the animus underlying his eventual termination as the city's chief negotiator, no prohibited practice claim was ever filed.

- During 1990 and 1991, the unions made significant political gains, electing supporters in key council races. Thereafter union representatives who disliked Thompson more openly called for his replacement.

- Following the 1991 election, defendants Flagg, Porter, and McPherson held a "secret" luncheon meeting to discuss

"new opportunities to get things done on the council" in light of the election results. Thompson was reportedly the focus of the conversation. Thereafter, rumors surfaced that Thompson's position was in jeopardy. A union representative confirmed the rumors, telling Thompson he should "find a way to mend fences and not force all issues to arbitration...."

- In early 1992, Carney assured Thompson there was no substance to the rumors. By April, however, Carney had received his "marching orders." At yet another meeting of less than a quorum of the council (arguably arranged to avoid Iowa Code chapter 21, the open meetings law) Carney received "quite a lecture" concerning Thompson, particularly regarding charges that he swore and used foul language at the bargaining table. It was suggested that management and labor need to "be more friendly and on the same team." Carney's notes from the meeting reveal a directive "to make appropriate improvements."

Thompson argued before the district court, and reiterates on appeal, that Carney faced a dilemma at this point. The union's problem with Thompson had become *Carney's* problem. Because, according to Thompson, Carney could not discharge him without cause, Carney had to devise a scheme to get rid of him some other way, or face his own termination. Thus was born the idea of eliminating Thompson's position through reorganization, a means of achieving indirectly what could not be done directly.

The district court rejected Thompson's portrayal of the case, finding that even under the most favorable reading of the facts no support existed on Thompson's assorted contractual, tort, and constitutional claims. The court did, however, permit Thompson's claim of contractual "bumping" rights to go to the jury. The jury expressly rejected Thompson's claimed right of transfer to another position at the same rate of pay.

Thompson challenges the jury's verdict on appeal, contending the court improperly excluded important documentary evidence bearing on Thompson's case. Thompson also cites error in the court's refusal to instruct on the doctrine of rescission as it pertains to a 1974 employee handbook and a manual for supervisory and professional employees (SPM manual) issued two years later. These and other errors alleged in connection with the court's summary judgment will be more fully explained in the discussion that follows.

## A. *Breach of contract.*

Thompson's recovery hinges on alleged oral and written promises that his position would not be terminated except for just cause and pursuant to established disciplinary procedures. Proof of these promises is the lynchpin of his case because his conspiracy theory unravels unless the reorganization was, in fact, a sham contrived to circumvent enforceable contractual rights.

■ There is no dispute under this record that Thompson's appointment in 1974 as director of employment relations was for an indefinite duration. His written notice of appointment so states. Thus, under Iowa law, Thompson's employment is presumed terminable at will by either party. *Anderson,* 540 N.W.2d at 281; *Fogel,* 446 N.W.2d at 455; *Allen v. Highway Equip. Co.,* 239 N.W.2d 135, 139 (Iowa 1976).

Thompson contested this "at-will" characterization of his employment status in response to the defendants' motion for summary judgment. He claimed oral representations made by the former city manager during his job interview assured him of continuous employment. He argued alternatively that the employee handbook distributed in 1974, as well as the SPM manual circulated in 1976, created a contract of employment terminable only for cause. In its ruling on the defendants' motion, the district court rejected Thompson's claim of oral contract as a matter of law. It effectively sidestepped the employee handbook/contract issue, however, by ruling that Thompson's notice of appointment and the handbooks expressly provide for layoff due to reorganization and, thus, no breach of contract could be established under this record.

On appeal, Thompson contests the court's ruling on the oral contract question. As for the handbook issue, the defendants contend the court drew the right conclusion but for the wrong reason. They argue there was no contract susceptible to breach. *See Grefe & Sidney v. Watters,* 525 N.W.2d 821, 826 (Iowa 1994) (trial court ruling sustainable on any ground appearing in record). We shall consider the arguments in turn.

■ *Oral contract.* Thompson bases his claim of oral contract on statements made by the former city manager, Richard Wilkey, during Thompson's hiring interview. Thompson recalled that the 1974 interview left him with the impression that the job would be his as long as he wanted it unless he made some mistake warranting termination. Wilkey's deposition testimony essentially confirmed this prediction regarding Thompson's job security, but clarified the context in which the representation was made: that the collective bargaining and personnel duties Thompson was assuming would continue to exist in the future for a city the size of Des Moines.

We recently considered the enforceability of such preemployment representations in *Fry v. Mount,* 554 N.W.2d 263 (Iowa 1996). There, as here, the prospective employer expressed the expectation that the person hired would enjoy long-term employment. *Fry,* 554 N.W.2d at 267. We held the statement was not actionable because its purpose was not to alter the employee's at-will status but to "sell" the company. *See id.* (affirming summary judgment for employer on claim of negligent misrepresentation).

Just as in *Fry,* Wilkey was trying to "sell" Thompson on employment with the City of Des Moines. They were not negotiating the terms of a binding contract for lifetime employment. This is apparent from the context in which the statements were indisputably made. In light of our holding in *Fry,* Thompson could not prevail on this claim as a matter of law. The district court was correct in so ruling.

■ *Written contract.* Even though the document confirming Thompson's employment made plain the indefinite duration of his appointment, Thompson claims the city's employee handbook and SPM manual established a contract that his employment could only be terminated for just cause. To so qualify, the handbook or manual must meet the requirements for a unilateral contract. *Anderson,* 540 N.W.2d at 283; *Hunter v. Board of Trustees,* 481 N.W.2d 510, 513 (Iowa 1992); *Fogel,* 446 N.W.2d at 455. An employee handbook may create a unilateral contract if (1) the handbook is sufficiently definite in its terms to create an *offer;* (2) the handbook has been communicated to and accepted by the employee so as to constitute *acceptance;* and (3) the employee continues working, to provide *consideration. Anderson,* 540 N.W.2d at 283; *McBride v. City of Sioux City,* 444 N.W.2d 85, 91 (Iowa 1989). The party relying on the unilateral contract carries the burden to prove its existence. *Anderson,* 540 N.W.2d at 283. Except in the case of ambiguity, whether an employee handbook binds the parties in contract is a question of law. *Fogel,* 446 N.W.2d at 456.

Our review of the documents in question reveals no ambiguity concerning their purpose that would generate a factual question for the jury. Neither the handbook nor the manual is couched in language sufficiently definite to constitute an offer of continuous employment. At the outset the handbook informs employees that a "permanent" appointment means the city "plans to engage your services continuously for an *indefinite* period." (Emphasis added.) Under the heading "Job Security" the handbook offers the assurance of *"reasonable* job security *as long as your job exists* and your work is satisfactory." (Emphasis added.) The handbook then advises that employees "are not protected against removal, demotion or suspension for just cause." But it never affirmatively states the converse: that employment will be terminable only for just cause. *Cf. Cannon v. National By–Products, Inc.,* 422 N.W.2d 638, 639 (Iowa 1988) (fact question generated on contractual nature of written personnel policies which stated "[n]o employee will be suspended, demoted, or dismissed without just and sufficient cause"). Moreover, the city's assurance of "reasonable" job security must be consid-

ered in light of the clear language of limitation that accompanies it. *See Anderson,* 540 N.W.2d at 286 (language of handbook must be considered in context). The handbook stated "positions may be deleted depending on the need and availability of program funds which affect individual employees." This limitation parallels the terms set out in Thompson's notice of appointment: "Employment may be terminated because of lack of work, or funds, or failure on the part of the appointee to fully qualify and perform the duties of the position or to abide by the city's personnel rules." It also echoes the handbook section on "Layoff" which notes that such events are "unpleasant" but may be necessitated "by reason of shortage of work or funds, the abolition of a position, or organizational changes." Examining the handbook objectively, as we must, we find no terms providing the certainty of dismissal only for cause that Thompson urges. *See id.* ("[W]e look for terms with precise meaning [and] if an offer is indefinite there is no intent to be bound.").

Defendants also correctly argue that the SPM manual sets forth policies, not directives, to guide those management and supervisory employees not otherwise governed by a collective bargaining agreement or Iowa Code chapter 400 (civil servants). The textual language is largely discretionary ("may"), not directory ("shall" or "must"). This limited use of "language of command" refutes Thompson's claim that the procedures outlined were intended to contractually bind the city. *See Phipps v. IASD Health Servs. Corp.,* 558 N.W.2d 198, 203–04 (Iowa 1997); *Anderson,* 540 N.W.2d at 286–87.

We conclude the district court correctly found no breach of contract because there was no contract to breach.[1] It properly ruled, however, that certain "bumping" policies contained in the employee manuals might govern Thompson's rights upon layoff

or reorganization, a matter to which we now turn.

### B. *New trial issues.*

The district court denied defendants' motion for summary judgment on the question whether Thompson was entitled to a transfer at the same salary following the elimination of his position for budgetary reasons. The "bumping" issue proceeded to trial. The jury returned the following verdict on this question:

> Did a contract of employment exist between plaintiff and defendant whereby the City of Des Moines promised that if plaintiff's position as employee relations director was ever eliminated, the City would offer plaintiff another position or positions that paid the same salary and benefits?
>
> ANSWER: No.

Thereafter the court denied Thompson's motion for new trial based on alleged errors in the exclusion of documentary evidence and with respect to jury instructions. Thompson now seeks reversal on the same grounds. We find no merit in either contention.

*Cumulative evidence.* Thompson tendered into evidence fifteen Personal Action Forms (PAFs) purporting to show the city's pattern of transferring employees to different jobs while retaining the same rate of pay and benefits. The court permitted introduction of four PAFs showing "salary freezes" for city employees transferred to positions with lower pay grades, but excluded the remaining records because they were cumulative in nature. The court advised plaintiff's counsel "[i]f you want to show [the transfer practice] is continuous, maybe the witness can say so. But there is no reason to have fifteen exhibits to tell the jury the same thing." Counsel then asked the witness to examine the eleven PAFs and describe what they showed.

On appeal Thompson claims the court erred in its refusal to admit all the PAFs

---

1. Our conclusion with respect to the invalidity of Thompson's contract claims necessarily disposes of his claims for intentional interference with contract and conspiracy. Thompson's failure to establish an employment contract also defeats his claimed deprivation-of-property rights under 42 U.S.C. § 1983. *McBride,* 444 N.W.2d at 91.

Likewise, because his noncivil service status prevents him from claiming the statutory protections afforded under Iowa Code chapter 400, his summary dismissal gives rise to no actionable due process claim under 42 U.S.C. § 1983. *Bennett v. City of Redfield,* 446 N.W.2d 467, 472 (Iowa 1989).

offered as exhibits. Iowa Rule of Evidence 403 governs our decision. It provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Iowa R. Evid. 403. The balancing of probative value against the rule's grounds for exclusion rests in the trial court's sound discretion. *Nichols v. Schweitzer*, 472 N.W.2d 266, 275 (Iowa 1991). Reversal is warranted only upon a showing that discretion has been abused. *Id.* at 276.

We find no abuse of discretion here. The tendered evidence was arguably cumulative. More importantly, substantial documentation was allowed into evidence to show the city's transfer policies. Plaintiff was granted, and utilized, the opportunity to have his witness testify to the significance of the excluded documents. Moreover, Thompson was permitted to testify that an established practice existed and to describe the practice in detail. No ground for reversal appears.

 *Jury instruction.* Finally, Thompson claims the trial court erred by refusing to instruct the jury on whether the employee handbook was still in effect or was replaced by the SPM manual. Thompson's proposed instruction asked the jury to determine whether the manual conflicted with the employee handbook. If so, the instruction directed the jury that it "must find that the [handbook] was rescinded by the parties when the city issued the SPM rules in 1976," and then to disregard the terms in the handbook. The court declined the proffered instruction, concluding there was not substantial evidence in the record to support Thompson's rescission theory.

Litigants are entitled to have their legal theories submitted if those theories are supported by the pleadings and substantial evidence in the record. *Sonnek v. Warren*, 522 N.W.2d 45, 47 (Iowa 1994). Moreover, the court's instructions must convey the applicable law in such a way that the jury has a clear understanding of the issues it must decide. *Id.* The trial court, however, must refuse to instruct on "an issue having no substantial evidential support or which rests on speculation." *Clinton Land Co. v. M/S Assocs.*, 340 N.W.2d 232, 234 (Iowa 1983).

The record contains no evidence on the essential elements of rescission underlying Thompson's requested instruction. *See generally Holi–Rest, Inc. v. Treloar*, 217 N.W.2d 517, 524 (Iowa 1974); *Novak Equip., Inc. v. Hartl*, 168 N.W.2d 924, 926 (Iowa 1969). Moreover, the city's assistant employee relations director testified that the employee handbook was not rescinded and remained in effect after issuance of the SPM manual. Thompson's contrary suggestion on appeal conflicts directly with his position assumed throughout the litigation that both documents governed his employment relationship with the city. Thus the court properly left to the jury the task of sorting out the parties' obligations, if any, under the two documents. The court's refusal to grant a new trial on this issue was not in error.

**AFFIRMED.**