# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-2238

_____

| | |
|---|---|
| Larry Bradshaw, | * |
| | * |
| Plaintiff - Appellant, | * |
| | * Appeal from the United States |
| v. | * District Court for the |
| | * Southern District of Iowa. |
| Brown Group, Inc., | * |
| | * |
| Defendant - Appellee. | * |

_____

Submitted:  February 12, 2001

Filed:  July 31, 2001

_____

Before LOKEN, HEANEY, and BYE, Circuit Judges.

_____

LOKEN, Circuit Judge.

Larry Bradshaw worked for Brown Group, Inc., for over thirty years, advancing to become a regional sales manager of the Famous Footwear division.  He was terminated in March 1997 because of poor performance and poor sales in his region.  Relying on an employee handbook he received in 1985, Bradshaw commenced this breach-of-contract action in state court, alleging wrongful termination because he was terminated without good cause and without being afforded the progressive discipline procedure set forth in the handbook.  After Brown Group removed the action, the

district court[1] granted its motion for summary judgment, concluding that the handbook was not sufficiently definite to alter Bradshaw's status as an at-will employee. Bradshaw appeals. We review the grant of summary judgment *de novo*, viewing the factual record in the light most favorable to Bradshaw, the nonmoving party. See Barge v. Anheuser-Busch, Inc., 87 F.3d 256, 258 (8th Cir. 1996). We affirm.

Bradshaw worked for many years in the Wohl Shoe Company division of Brown Group, rising to general manager of thirteen leased shoe departments in Younkers department stores. In 1985, Bradshaw received a copy of Wohl's Personnel Policy and Procedure Manual (the "Wohl Manual"), a three-hundred-page document the stated purpose of which was to provide members of management with "all of the policies and procedures needed to deal with personnel matters on a day to day basis." In early 1994, Brown Group dissolved the Wohl division, and Bradshaw began working for the Famous Footwear division as a regional sales manager. His regions failed to meet company sales goals in 1995 and 1996, and he was criticized for various performance deficiencies. He received a negative annual performance evaluation in February 1997 and was terminated one month later.

An at-will employee may quit or be terminated at any time, with or without cause. Under Iowa law, employment relationships are presumed to be at-will. Fogel v. Trustees of Iowa College, 446 N.W.2d 451, 455 (Iowa 1989). As Bradshaw had no written employment contract, he was an at-will employee unless, as he argues, the Wohl Manual created a unilateral contract "guarantee[ing] an employee that discharge will occur only for cause or under certain conditions." French v. Foods, Inc., 495 N.W.2d 768, 770 (Iowa 1993). An employee policy manual creates a unilateral contract if "(1) the handbook is sufficiently definite in its terms to create an *offer*; (2)

---

[1]The HONORABLE CELESTE F. BREMER, United States Magistrate Judge for the Southern District of Iowa, to whom the case was assigned with the consent of the parties. See 28 U.S.C. § 636(c); FED. R. CIV. P. 73(b).

the handbook has been communicated to and accepted by the employee so as to create an *acceptance*; and (3) the employee has continued working, so as to provide *consideration*." Fogel, 446 N.W.2d at 456 (emphasis in original). Whether an employer's policy manual binds the parties in contract is a question of law, unless the document is ambiguous. Thompson v. City of Des Moines, 564 N.W.2d 839, 844 (Iowa 1997). The district court concluded that the Wohl Manual was not sufficiently definite to constitute an offer of a unilateral contract that modified the at-will nature of Bradshaw's employment. We agree.[2]

In determining whether a manual is sufficiently definite to constitute an offer by the employer, the Supreme Court of Iowa examines the following factors:

> (1) Is the handbook in general and the progressive disciplinary procedures in particular mere guidelines or a statement of policy, or are they directives? (2) Is the language of the disciplinary procedures detailed and definite or general and vague? (3) Does the employer have the power to alter the procedures at will or are they invariable?

---

[2]Famous Footwear had its own employee handbook, which expressly provided that "any employee may be terminated without prior notice or reason at any time." Such disclaimers are effective under Iowa law to defeat a claim that the handbook created a unilateral contract modifying an employee's at-will status. See, e.g., Anderson v. Douglas & Lomason Co., 540 N.W.2d 277, 287-88 (Iowa 1995). However, Bradshaw testified that, before he started working for Famous Footwear, he was told that all of the Wohl division policies would continue to apply to him at Famous Footwear. Therefore, like the district court, we put aside Brown Group's defenses based upon Bradshaw's later relationship with Famous Footwear and consider only whether the Wohl Manual created a contract guaranteeing that he must be terminated for cause and after progressive discipline.

<u>Anderson</u>, 540 N.W.2d at 286 (citations omitted), followed in <u>Phipps v. IASD Health Servs. Corp.</u>, 558 N.W.2d 198, 203-04 (Iowa 1997), and <u>Jones v. Lake Park Care Ctr.</u>, 569 N.W.2d 369, 375 (Iowa 1997).

The Wohl Manual's table of contents listed twenty-one sections covering numerous employment topics such as selection and hiring, employee benefits, performance appraisal, employee separation, personnel records, and job description. The record on appeal includes only Section 11, entitled "Guidelines for Employee Conduct/Work Rules." Section 11 began with a statement of "General Policy":

> In the interest of an efficient and safe operation of the store and to protect the well-being and rights of all employees, it is necessary to observe certain work rules and rules of conduct. Violation of Company rules, policies, and procedures outlined in this handbook is cause for corrective action as outlined by this chart.
>
> Prior to the separation of an employee it is advisable to involve the immediate supervisor and the St. Louis Personnel Department BEFORE taking action, to insure their support.

There followed a chart listing thirty-five specific work rules and the corrective actions prescribed for non-compliance with each rule. Those sanctions ranged from immediate termination for offenses such as stealing and falsifying company documents, to a sequence of verbal and written warnings prior to termination for offenses such as "excessive socializing" at work and holding merchandise for a customer more than three days. For a number or reasons, we conclude that Section 11 of the Wohl Manual was not sufficiently definite to create a unilateral contract.

First, Section 11 is worded as a guide to management personnel, and there is no evidence it was distributed to employees generally. "The key to determining whether a contract has been created is whether a reasonable employee upon reading the

handbook would believe they had been guaranteed certain protections by their employer." Jones, 569 N.W.2d at 375. Absent evidence of circulation beyond managers such as Bradshaw, there is no basis to infer that Brown Group intended, or that employees received, an offer of guaranteed job security.

Second, Section 11 contains no language stating that an employee may only be terminated for cause. Although the General Policy states that violations of the work rules may be "cause" for discipline, "it never affirmatively states the converse: that employment will be terminable only for just cause." Thompson, 564 N.W.2d at 844. The Wohl Manual's silence on the for-cause issue "reflects the terminable-at-will status of [Wohl] employees." Fogel, 446 N.W.2d at 456 (quotation omitted).

Third, while Section 11 listed many specific work rules and their prescribed corrective actions, the list did not purport to be exhaustive, and it omitted entirely the category of terminations for performance deficiencies. Thus, Section 11 did not set forth a definite and comprehensive regime for disciplining employees. The gaps in its coverage are well-illustrated by this dispute. Bradshaw argues that he was terminated for violating Work Rule 1, which declared that "selling and non-selling responsibilities are to be shared by all employees" and which provided a four-step discipline process for non-compliance, beginning with a "Verbal Warning." But Work Rule 1 made no reference to poor sales performance, either by an individual salesperson, or by a regional sales manager such as Bradshaw. The clear import of the rule was that sales employees must be willing to perform non-selling duties, such as stocking and cleaning. Neither Work Rule 1 nor any other rule in Section 11 addressed the question of whether a regional sales manager may be terminated for persistently poor sales performance. This critical omission confirms that the work rules were not a definite offer to modify Bradshaw's at-will employment status.

Fourth, the Wohl Manual expressly provided that all policies were subject to change at any time, the third relevant factor cited by the Iowa Supreme Court.

-5-

Finally, the General Policy portion of Section 11 recommended that an immediate supervisor and the Personnel Department be consulted prior to the termination of any employee, even if termination was the sole prescribed corrective action. This tends to confirm that the Wohl Manual was an informational guide to management personnel (such as Bradshaw), not the offer of a unilateral contract guaranteeing employees rights to for-cause termination and progressive discipline. A manual that "sets forth policies, not directives," for management is not sufficiently definite to contractually alter the at-will relationship. Thompson, 564 N.W.2d at 845.

For the foregoing reasons, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.