# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-4463

_____

| | | |
|---|---|---|
| C. Alan Scott, | * | |
| | * | |
| Plaintiff - Appellant, | * | |
| | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Western |
| | * | District of Missouri. |
| | * | |
| Missouri Valley Physicians, P.C.; | * | |
| K. Tom Papreck; Jack Uhrig; Douglas | * | |
| Koehn; Mica Newman-Koehn, | * | |
| | * | |
| | * | |
| Defendants - Appellees. | * | |

_____

Submitted: June 14, 2006
Filed: August 17, 2006

_____

Before MURPHY, MELLOY and COLLOTON, Circuit Judges.

_____

MELLOY, Circuit Judge.

C. Alan Scott brought this action against his employer, Missouri Valley Physicians, P.C. (MVP) and his medical partners, Tom Papreck, Jack Uhrig, Douglas Koehn, and Mica Newman-Koehn, regarding the termination of his employment and

shareholder position. The district court[1] granted summary judgment in favor of the defendants, concluding that Scott did not present evidence of a breach of contract or demonstrate that his termination was retaliatory in violation of public policy. We affirm.

Scott was a physician and shareholder of MVP from 1988 until September 2002. Scott and defendants Uhrig, Papreck, Koehn, and Newman-Koehn constituted the MVP Board of Directors. Under the terms of his employment agreement, Scott was an at-will employee of MVP. The agreement stated that his employment could be "voluntarily terminated, with or without cause, by either the Corporation, upon a two-thirds [vote] of the Directors of the Corporation . . . or [by the] Employee for any reason, by the terminating party giving sixty (60) days' written notice to the other, which written notice shall state the effective date of Employee's termination of employment."

Scott alleges that beginning in January 2002 and continuing until his discharge from employment, he complained to the officers and fellow directors of MVP that MVP's compensation formula violated federal anti-referral laws (known as Stark laws). Stark laws prohibit a physician from having his or her own compensation directly tied to the volume of self-referrals or laboratory or ancillary services generated by that physician. Scott also states that he complained about various proposals to circumvent compliance with Stark laws.

On July 8, 2002, the Board sent a "Notice of Special Meeting of the Board of Directors of Missouri Valley Physicians, P.C." to Scott. The notice stated that the meeting would occur on July 10, 2002, via conference call. The notice listed the purpose of the meeting as discussing and voting on whether Scott's employment with

---

[1]The Honorable Dean Whipple, Chief Judge, United States District Court for the Western District of Missouri.

MVP should be terminated. At the July 10 meeting, two-thirds of the MVP Board of Directors voted to terminate Scott's employment. Scott argues that the July 10 meeting was a sham and that he was actually terminated at a meeting held on June 17, 2002, at Newman-Koehn's home. Although the defendants contest this assertion, we consider the facts in the light most favorable to Scott. However, the timing and procedure surrounding Scott's termination are not relevant to the issue presented on appeal as to whether Scott's termination was retaliatory in violation of public policy.

Following his termination, Scott filed suit against MVP and the other members of the MVP Board of Directors. The defendants moved for summary judgment on all claims. Scott resisted the motion on only two claims: breach of contract and wrongful discharge in violation of the public policy exception to the employment-at-will doctrine. The district court granted summary judgment in favor of the defendants. Scott now brings this timely appeal of the district court's grant of summary judgment on his claim for wrongful discharge in violation of public policy.[2]

We review the district court's grant of summary judgment de novo. Bradshaw v. Brown Group, Inc., 258 F.3d 847, 848 (8th Cir. 2001). Summary judgment is appropriate when no genuine issue of material fact is present such that the moving party is entitled to judgment as a matter of law. Fed R. Civ. P. 56(c). In reviewing a grant of summary judgment, we examine the facts in the light most favorable to the adverse party and make all reasonable inferences from those facts to the benefit of the adverse party. Reed v. ULS Corp., 178 F.3d 988, 990 (8th Cir. 1999).

On appeal, Scott alleges that the district court erred in granting summary judgment because he made disclosures that qualified him as a whistleblower. In Missouri, an at-will employee may be discharged at any time, with or without cause.

---

[2]Scott did not appeal the district court's decision regarding his breach of contract claim.

See Luethans v. Wash. Univ., 894 S.W.2d 169, 172 (Mo. 1995). However, Missouri courts have recognized a public policy exception to the employment-at-will doctrine. Faust v. Ryder Commercial Leasing & Servs., 954 S.W.2d 383, 389 (Mo. Ct. App. 1997) ("[W]hen the discharge of an at-will employee violates a clear mandate of public policy . . . the employee has a wrongful discharge claim."). The Missouri courts have recognized four types of cases under this exception: 1) discharge due to a refusal to perform an illegal act; 2) discharge based on an employee's act of reporting violations of law or public policy to superiors or public authorities; 3) discharge based on an employee's participation in acts encouraged by public policy, such as jury duty; and 4) discharge because an employee filed a worker's compensation claim. Id. at 390. Scott alleges that his actions fall under the second exception, commonly referred to as the whistleblowing exception.[3]

Scott has brought forth no evidence other than his own deposition and affidavits to substantiate his claims. Even if we assume, arguendo, that Scott can point to sufficient evidence to demonstrate that MVP's compensation formula violated federal Stark laws, his actions do not constitute whistleblowing under Missouri's public policy exception to the employment-at-will doctrine. The public policy exception exists to encourage employees to report suspected wrongdoing to the proper authorities to expose the wrongdoing and assist in the prosecution of those committing the crime. Faust, 954 S.W.2d at 390-91. In this case, Scott complained about the compensation formula that allegedly violated Stark laws to his fellow members of MVP's Board of Directors, the people he alleged were the wrongdoers. The district court correctly concluded that reporting of possible violations of Stark laws to the purported wrongdoers does not meet the whistleblowing exception because it does not further the "clear mandate of public policy." Id. at 391 (holding that reporting wrongdoing to the wrongdoer, who is the purported whistleblower's supervisor, does

---

[3]Scott does not argue that his actions fall under any of the other three recognized categories of cases under the public policy exception.

-4-

not constitute internal whistleblowing sufficient to support a claim of wrongful, retaliatory discharge under the public policy exception).

Scott argues that the case at bar is analogous to <u>Dunn v. Enterprise Rent-A-Car Co.</u>, 170 S.W.3d 1 (Mo. Ct. App. 2005). In <u>Dunn</u>, the Missouri Court of Appeals held that Thomas Dunn made a submissible claim when he asserted that he had been terminated for internal reporting of conduct he reasonably believed to be a violation of federal securities laws. <u>Id.</u> at 11. Scott's reliance on <u>Dunn</u> is misplaced. Although Dunn and Scott both reported to their respective employers, rather than to an external authority, Dunn reported the conduct to his immediate supervisor, who was not involved in the purported wrongdoing. <u>Id.</u> at 4. In contrast, Scott reported his concerns directly to the purported wrongdoers. Thus, the objectives of the public policy exception were met in <u>Dunn</u>, but not in Scott's case. We conclude that Scott has not demonstrated that his actions constitute whistleblowing under the exception laid out by the Missouri courts.

For the forgoing reasons, we affirm the district court's grant of summary judgment.

_____